## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT CINCINNATI

| | | |
|---|---|---|
| **HEALTHY ADVICE NETWORKS, LLC** | ) | **Case No: 1:12-cv-610** |
| | ) | |
| **Plaintiff,** | ) | **Judge Dlott** |
| | ) | |
| **v.** | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| **CONTEXTMEDIA, INC.** | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

## DECLARATION OF RISHI SHAH

I, Rishi Shah, do hereby declare and state as follows:

1. I am making this declaration based on my personal knowledge of the matters described herein, and/or records maintained in the course of ContextMedia, Inc.'s business, and would testify competently thereto if called on to do so.

2. I am the co-Founder and Chief Executive Officer of ContextMedia, Inc.

I. **Industry For Point-of-Care Health Media Platforms**

3. ContextMedia owns and operates a suite of digital healthcare platforms delivering condition specific educational programming to patients at waiting areas, and in some cases in exam and infusion rooms, in medical facilities. These locations are known as "at the point – of – care." ContextMedia considers itself a "for-benefit company" in that it exists to serve society and all stakeholders while operating as a for-profit company.

1

4.      A rapidly growing number of physician practices are installing digital systems, like that of ContextMedia, that deliver relevant, sophisticated, and targeted educational audio-video content.

5.      The digital content that Context delivers at the point-of-care includes: educational information about specific conditions (*i.e.*, signs and symptoms, individuals at risk, treatment options, etc.); medical advice and recommendations for living with and managing specific conditions; exercise and nutrition segments; patient stories; healthy recipes; advertisements for pharmaceuticals and other health care consumer brands; and health related public service announcements.

6.      ContextMedia's content is derived from licensing partners, trade associations, production houses, in-house production, sponsors, and other sources.  An exemplary screen-capture from ContextMedia content is shown here:



7.      ContextMedia's products and services are extremely effective tools for a variety of reasons.  They engage, educate, and inspire patients when and where patients' health is at the top of patients' minds and when patients can take action.  They empower patients to ask physicians questions about conditions and seek additional information that the patients may not

2

have otherwise inquired about. They provide patients with information to make healthier lifestyle choices and positively impact health outcomes. They also allow physicians to add personal messages for patients about topics such as education classes, support groups, nutrition tips, staff bios, and paperwork for visits.

8.      ContextMedia's competitors in this space include: Healthy Advice Networks (now PatientPoint); Accent Health; Health Media Networks; Health Focus Media; Health Monitor Network; Everwell TV; CARE Media, and others.

## II.      Infrastructure surrounding health media platforms

9.      ContextMedia installs its systems primarily in physician waiting areas, but also in exam and infusion rooms, in hospitals, university hospitals, clinics and private practices.

10.      ContextMedia's content is delivered over broadband through media players connected to the Internet via cable or wireless connections.

11.      Equipment installed at the point-of-care includes a flat-panel television and a computer media player. Most installations are wall-mounted; however, in some cases the system will be placed on a television stand.

12.      Other ancillary and commonplace hardware equipment may be used in installations, including cabling or remote controls.

13.      Many practices requesting ContextMedia's service have existing equipment such as a cable television setup or a competitor's system.

14.      Legacy equipment is typically removed for two primary reasons. First, waiting rooms are small and often do not have wall space for two TVs. Second, it is hard to keep two TVs on with competing audio and video programming in one location.

## III.      ContextMedia, Inc.

15. ContextMedia was founded in 2006 by me and current Chief Strategy Officer, Shradha Agarwal. Having several family members afflicted with diabetes, the Founders were inspired to educate patients and caregivers about chronic disease conditions.

16. The Company began deploying screens in 2006, with a focus on physicians who primarily treated diabetes patients (*i.e.*, endocrinologists). By 2010, ContextMedia screens were deployed in one quarter of all endocrinologist practices in the United States, representing nearly one million diabetes patients.

17. ContextMedia has continued to grow its diabetes offering and expanded into other medical conditions. In 2010, ContextMedia expanded into rheumatology practices. Expansion continued in 2011, with the additions of several hundred cardiology practices. ContextMedia offers its platforms under the brand names Diabetes Health Network, Rheumatoid Health Network, and Heart Health Network.

18. ContextMedia currently has in its network more than 1,600 screens deployed with over 4000 physicians, representing millions of patients.

19. ContextMedia's growth has, in many instances, resulted in physician practices moving away from a competitor's service in favor of ContextMedia.

20. To date, ContextMedia has replaced Healthy Advice in approximately 129 practices.

21. Physician practices prefer ContextMedia over competitor services for a variety of reasons.

    a. ContextMedia's service offers flexibility and a variety of content specifically targeted to conditions treated by its target practices, such as diabetes, rheumatoid arthritis, gout, or lupus.

    b.  ContextMedia's content is in the format of videos, rather than slideshows, and comes from several credible sources such as medical associations and production companies, who interview industry-leaders in the practice of medicine.

    c.  ContextMedia offers its service free of charge and provides free account management. ContextMedia's account management handles troubleshooting within 48 hours and has a dedicated account representative having a direct phone number and email address.

    d.  ContextMedia gives physicians the "Doctor's Choice Guarantee," which allows physicians to remove any content they do not like or approve. ContextMedia is the first company to offer this choice.

    e.  Physicians want to align with ContextMedia because of ContextMedia's mission of education and working with each practice in a service-oriented manner.

22.    ContextMedia's revenue is generated through advertising on its digital media platforms. Advertisers include pharmaceutical and other health care consumer brands. Advertising cost structures vary by contract but are typically based on number of venues and prescriber characteristics.

IV.  **Sales Process**

23.    ContextMedia targets physicians' practices to solicit them to sign up for ContextMedia's service. For this purpose, ContextMedia has a dedicated in-house phone sales team. ContextMedia also uses direct marketing, such as mail.

24.    Sales leads are generated from physician lists that are purchased from third parties.

25.     ContextMedia's sales team does not expressly target practices that use Healthy Advice. ContextMedia's sales team does not have that level of information about targeted practices.

26.     ContextMedia also exhibits at several industry tradeshows, conferences, and meetings from which it generates sales and leads.

27.     When speaking to physicians and practices about becoming members, ContextMedia representatives discuss the benefits and educational content of ContextMedia's service.

28.     A representative copy of the sign-up form that ContextMedia receives from practices that select ContextMedia is attached to this declaration as Exhibit A.

V.      **Installation Process**

29.     Many practices that ContextMedia targets already have existing electronic media in their office. Examples include cable television, DVD players, a competitor's product, or other systems.

30.     In cases where practices desire to replace a competitor's system, including for practices with systems from Healthy Advice, the practice is told that ContextMedia can have a technician remove the equipment and install the new ContextMedia system. However, ContextMedia explains that the practice must first provide ContextMedia with written authorization and approval to remove the equipment.

31.     Prior to scheduling installation in a practice where a competitor's system exists, including practices having Healthy Advice equipment, ContextMedia must receive the written authorization from the practice authorizing removal of the existing system and installation of the ContextMedia system.

32.     A representative copy of the written authorization that ContextMedia receives from practices is attached to this declaration as Exhibit B.

33.     ContextMedia does not object, interfere, or otherwise attempt to dissuade any practice from notifying a competitor that the practice intends to remove the competitor's equipment or terminate the competitor's services.

34.     For practices that had been using Healthy Advice equipment and services:

a.  ContextMedia does not represent that the practices "have no contract with Healthy Advice," as alleged in ¶ 24 of Healthy Advice's Complaint.

b.  ContextMedia does not represent that ContextMedia is "authorized to remove the Healthy Advice Property," as alleged in ¶ 25 of Healthy Advice's Complaint.

c.  ContextMedia does not tell practices that the practices should breach contracts they might have with Healthy Advice.

35.     On the day of installation at a physician's practice where a competitor system is being removed, technicians contracted by ContextMedia:

a.  take photograph's of competitor system prior to removal;

b.  carefully lay out on the floor and photograph the equipment again;

c.  package the equipment in boxes;

d.  tape and seal the boxes;

e.  install the ContextMedia system; and

f.  place the packaged equipment at a location specified by the practice's office manager.

36.     Upon completion of the removal and the new installation, the technician, together with the office manager, contacts a ContextMedia network operations engineer.  They confirm to

the ContextMedia network operations engineer that the competitor's equipment has been packaged and is being left with the practice, awaiting pick up by FedEx.

37.     Usually within a period of days, the competitor's equipment is picked up by FedEx and shipped directly to the competitor.

38.     ContextMedia does not currently ship any Healthy Advice equipment to ContextMedia's office. All HAN equipment is promptly shipped directly from the physician's office to HAN via FedEx.

39.     In one prior instance, Healthy Advice equipment was first shipped to ContextMedia who then shipped the equipment to Healthy Advice. As of February 2011, Context has implemented procedures to ensure Healthy Advice equipment is shipped directly to Healthy Advice and is not sent to Context.

40.     In certain rare instances, numbering fewer than five, shipments were improperly labeled and shipped to ContextMedia rather than HAN. ContextMedia's current practice, and the practice followed in those instances, is to reject those shipments, in which case the shipment goes back to the physician's practice. ContextMedia then has FedEx retrieve the shipment again from the physician's office and deliver it to HAN.

41.     With the exception of one Healthy Advice media player that ContextMedia believes was lost by FedEx during shipment, ContextMedia is not aware of any missing or damaged equipment belonging to Healthy Advice. In a March 1, 2011 correspondence, Healthy Advice claimed that this media player was worth $765.

42.     ContextMedia does not currently possess any Healthy Advice equipment.

VI.     **Pre-suit correspondence with Healthy Advice**

43.     Attached as Exhibit C to this declaration is a true and accurate copy of a January 20, 2011 correspondence from Healthy Advice (through counsel) to ContextMedia.

44.     Attached as Exhibit D to this declaration is a true and accurate copy of a January 28, 2011 correspondence from Context (through counsel) to Healthy Advice (through counsel).

45.     Attached as Exhibit E to this declaration is a true and accurate copy of a February 8, 2011 correspondence from Healthy Advice (through counsel) to ContextMedia (through counsel).

46.     Attached as Exhibit F to this declaration is a true and accurate copy of a February 11, 2011 correspondence from ContextMedia (through counsel) to Healthy Advice (through counsel).

47.     Attached as Exhibit G to this declaration is a true and accurate copy of a March 1, 2011 correspondence from Healthy Advice (through counsel) to ContextMedia (through counsel).

48.     Attached as Exhibit H to this declaration is a true and accurate copy of a March 4, 2011 correspondence from ContextMedia (through counsel) to Healthy Advice (through counsel).

49.     ContextMedia was served with Healthy Advice's complaint and motion for preliminary injunction in the above-captioned matter on August 20, 2012.

50.     Between March 4, 2011 and August 20, 2012, ContextMedia did not receive any correspondence from Healthy Advice.

51.     I declare under penalty of perjury that the foregoing is true and correct. Executed on _10/3/_ 2012 within the United States.

9

# EXHIBIT A



**Please submit to: Matt Garms**
E: Matt.Garms@contextmediahealth.com
P: 312-239-6047| F: 312-265-8482

## MEMBERSHIP AGREEMENT

COMPLETE THE FORM BELOW TO START YOUR CONTEXTMEDIA:HEALTH MEMBERSHIP.

Practice Name: _____     Hours: _____

Address: _____  City: _____  State: _____  Zip: _____

Contact Name: _____  Title: _____

Phone: _____  Fax: _____  Email: _____

Facility Type:  ☐ Private Practice (Solo)   ☐ Private Group   ☐ Hospital   ☐ Satellite Clinic   ☐ Other _____

# of Waiting Rooms: _____     Average # of Patients Seen From the Waiting Area(s)/ Week: _____

Average Patient Wait-Time: _____     Does Your Facility Have Internet?  ☐ Yes*   ☐ No
*If Yes, Provider/Contact Details: _____

CHECK THE BOX(ES) BELOW TO SELECT YOUR PROGRAMMING FOCUS.

☐ Diabetes     ☐ Rheumatology     ☐ Cardiovascular   ☐ Other _____

WHAT PERCENT OF PATIENTS ARE TREATED FOR THE CONDITIONS BELOW BY YOUR PRACTICE?

Type 1 Diabetes _____%   Osteoarthritis _____%   Cholesterol _____%   Other: _____ _____%

Type 2 Diabetes _____%   Rheumatoid Arthritis _____%   Hypertension _____%   Other: _____ _____%

PLEASE INDICATE THE NUMBER OF HEALTHCARE PROFESSIONALS AT THIS LOCATION WHO ARE:

MD/DO _____     RNP/NP _____     PA _____

PLEASE LIST ALL HEALTHCARE PROFESSIONALS ON STAFF AT THIS LOCATION.

| First Name | Last Name | Specialty | MD/DO | RNP/NP | PA | Other | FT | PT |
|---|---|---|---|---|---|---|---|---|
| First Name | Last Name | Specialty | MD/DO | RNP/NP | PA | Other | FT | PT |
| First Name | Last Name | Specialty | MD/DO | RNP/NP | PA | Other | FT | PT |

## MEMBERSHIP AGREEMENT

☐ Yes, I would like to become a member and receive a free installation of the ContextMedia:Health service for my waiting room at the address listed above.

☐ I understand that the waiting-room TV system is provided at no cost, that ContextMedia:Health is responsible for all maintenance, replacement and equipment liability for the TV system and that my practice will never be charged fees of any kind to be a member.

☐ I confirm that the data provided above is accurate for my practice to the best of my knowledge.

☐ I agree that the ContextMedia:Health service will be the only TV system in this waiting room, I commit to have the system playing during all patient appointment hours, and I agree to complete a brief monthly member feedback form.

☐ I agree to not remove, relocate, modify, or disrupt any ContextMedia:Health TV system components without prior consent.

SIGNATURE: _____     DATE: _____

# EXHIBIT B

**ContextMedia** *Health*

**ContextMedia:Health Waiting-Room TV Service Installation Authorization**

The Practice of _____ has agreed to replace its current waiting-room TV system provided by _____ with the ContextMedia:Health waiting-room TV service, at its facility located at _____ _____.

Our practice has requested and authorized the technician responsible for installing the ContextMedia:Health waiting-room TV service, to also uninstall and remove the existing _____ system and to arrange to have all equipment returned to _____.

This Authorization should not, in any way, be construed as a contract between the Practice and ContextMedia:Health, and **does not** obligate the Practice to keep the ContextMedia:Health waiting-room TV service for a specified period of time.  If not satisfied, the Practice may request to have the system removed at anytime at no cost.

Authorization Signature:  _____

Name:  _____

Title:  _____

Date:  _____

# EXHIBIT C



**Nilesh (Neal) Patel**
Counsel
513.369.4805 (t)
513.651.6981 (f)
npatel@fbtlaw.com

January 20, 2011

**VIA OVERNIGHT MAIL**
**& EMAIL (contact@contextmediainc.com)**
Rishi U. Shah, CEO
ContextMedia, Inc.
205 N. Michigan Ave, Suite 2610
Chicago, Illinois 60601

> Re:   **Tampering, Interference and Conversion of Network Equipment by Context
> Media, Inc. ("ContextMedia"), d/b/a Rheumatoid Health Network/Diabetes
> Care Network**

Mr. Shah:

This firm is legal counsel to Healthy Advice Networks LLC ("Healthy Advice").  It has recently come to the attention of our client that ContextMedia has accessed, removed, damaged and taken possession of various media equipment and other materials licensed by Healthy Advice to the following physician offices, among potentially others: (a) Dr. Kenneth R. Margules, 2026 Lewis Ave, Chicago, IL 60099; (b) Dr. Kenneth R. Margules, 809 Garfield Ave, Libertyville, IL 60048; and (c) Dr. Carlos Martinez, 2291 Union Rd., Buffalo, NY 14224 (the "Physician Offices").

Healthy Advice's investigation into this matter is ongoing, particularly with respect to ContextMedia's involvement.  At this point, Healthy Advice has reason to believe that ContextMedia has: (1) intentionally interfered with contractual relationships between Healthy Advice and each Physician Office; (2) accessed and/or damaged valuable and proprietary Healthy Advice property from the Physician Offices – this includes, but is not limited to, digital monitors, computers, software and other intellectual property, brochures and other materials, brochure racks, modems and other communication equipment, audio and video cables, power cables and equipment, and mounting equipment (collectively, "Healthy Advice Property"); (3) removed from the Physician Offices, and taken possession of, the Healthy Advice Property; (4) returned some Healthy Advice Property to Healthy Advice, while permanently keeping other Healthy Advice Property; and (5) generated and sent misleading and deceptive termination letters purportedly from the Physician Offices to Healthy Advice.  ContextMedia's activities in this regard are unlawful.

Healthy Advice, by and through this firm, hereby **DEMANDS** that ContextMedia, together with its employees and agents, immediately **CEASE AND DESIST** from any of the activities described above as well as any other unlawful activities in connection with Healthy Advice, its property and/or contractual relationships.  Healthy Advice further demands that ContextMedia, within **5 days** of the date of this letter, comply with the following:

(1)     ContextMedia shall immediately send via overnight (and fully insured) delivery, in a manner that insures safe handling and safe delivery, all Healthy Advice Property in its possession to Healthy Advice Networks LLC, 8230 Montgomery Road, Suite 300, Attn: EVP Field Operations, Cincinnati, OH 45236;

(2)     ContextMedia shall provide a full and complete list of each and every location from which it has accessed, tampered with and/or removed any Healthy Advice Property;

(3)     ContextMedia shall provide a full and complete accounting of all Healthy Advice Property ContextMedia has removed from the Physician Offices or any other location;

(4)     ContextMedia shall provide a full and complete list of every person (whether that person is a ContextMedia employee, independent contractor, agent or other individual) who has been in contact with or possession of the Healthy Advice Property from the time ContextMedia removed the Healthy Advice Property from the Physician Offices to the time of delivery to Healthy Advice;

(5)     ContextMedia shall provide a full and complete list of every person (whether that person is a ContextMedia employee, independent contractor, agent or other individual) who has obtained access to any documents and/or other information stored on the Healthy Advice Property and shall immediately return to Healthy Advice Networks LLC all copies of such documents and/or other information that such people made;

(6)     The lists required under (4) and (5) above shall include contact information for every person named: address, active phone numbers (home, office and cell), fax number, and email address;

(7)     ContextMedia shall certify under oath that it has complied with the demands set forth in this letter.

This is quite obviously an extremely serious matter and it is clear that Healthy Advice has already suffered material damages in connection with ContextMedia's activities. Healthy Advice will neither tolerate such practices nor hesitate to immediately take action against ContextMedia to protect Healthy Advice's property and rights.  **Healthy Advice is prepared to protect its rights to the fullest extent of the law, including civil and criminal penalties.**

As noted, Healthy Advice's investigation into this matter is ongoing.  As such, the foregoing is not a complete recitation of our client's rights or remedies in this matter, and all such rights and remedies are hereby specifically reserved.

We strongly recommend and anticipate your compliance by **January 28, 2011**.

Very truly yours,

FROST BROWN TODD LLC

Nilesh S. Patel

# EXHIBIT D

McGuireWoods LLP
77 West Wacker Drive
Suite 4100
Chicago, IL 60601-1818
Phone: 312.849.8100
Fax: 312.849.3690
www.mcguirewoods.com

Jonathan H. Chester
Direct: 312.849.3694

jchester@mcguirewoods.com
Direct Fax: 312.920.3698

# McGuireWoods

January 28, 2011

**VIA E-MAIL and U.S. MAIL**
Nilesh (Neal) Patel, Esq.
Frost Brown Todd, LLC
2200 PNC Center, 201 East Fifth Street
Cincinnati, Ohio 45202-4182
npatel@fbtlaw.com

Re:   *Dispute Between Healthy Advice Networks LLC and ContextMedia, Inc.*

Dear Mr. Patel:

McGuireWoods LLP is legal counsel to ContextMedia, Inc. ("ContextMedia"), d/b/a Rheumatoid Health Network/Diabetes Health Network.  We are in receipt of your letter addressed to Rishi U. Shah, ContextMedia's CEO, dated January 20, 2011 (the "January 20 Letter").  For the reasons set forth below, ContextMedia denies any and all wrongdoing alleged by you and/or your client in the January 20 Letter.

First, with regard to Healthy Advice Networks LLC's ("Healthy Advice") allegation that ContextMedia has "accessed, removed, damaged and taken possession of various media equipment and other materials licensed by Healthy Advice" to various physicians' offices, upon termination of the license by the physician, any equipment that has come into ContextMedia's possession has been returned to Healthy Advice undamaged.  Moreover, ContextMedia denies that it has unlawfully gained access to Healthy Advice's intellectual property.  If you have evidence to support your accusation, we demand that you present it to us.  ContextMedia has no need for your client's intellectual property because the delivery system employed by ContextMedia is completely different from that of Healthy Advice.

Second, Healthy Advice's suggestion that ContextMedia has intentionally interfered with contractual relationships between Healthy Advice and various physicians' offices does not pass legal muster.  As a competitor of Healthy Advice, ContextMedia has a broad privilege to solicit physicians to provide the services offered by ContextMedia without liability to Healthy Advice.  *See* RESTATEMENT (SECOND) TORTS § 768 (1979).  This is particularly true during the period when the contract between Healthy Advice and the physicians is terminable at will.  *Id.*  When a contract is terminable at will, a competitor may, "for his own competitive advantage, [] obtain the future benefits for himself by causing the termination.  Thus he may offer better contract terms, as by … offering a seller higher prices for goods, and he may make use of persuasion or other suitable means, all without liability."  *See* RESTATEMENT (SECOND) TORTS § 768 at cmt. i.

Nilesh (Neal) Patel, Esq.
January 28, 2011
Page 2


  For the reasons stated above, ContextMedia sees no reason to discontinue any of its current practices relating to soliciting business from physicians.  The foregoing is not intended to be an exhaustive recitation of the facts or law applicable to this situation, nor is this letter intended to waive any right, remedy or position ContextMedia may have, all of which are expressly reserved.

  Please feel free to contact me with any questions.


       Very truly yours,


       Jonathan H. Chester


cc:  Rishi Shah (via email)
   Jim Demas (via email)
   Scott L. Glickson, Esq. (via email)


\28967412

# EXHIBIT E



**Nilesh (Neal) Patel**
Counsel
513.369.4805 (t)
513.651.6981 (f)
npatel@fbtlaw.com

February 8, 2011

<u>**VIA EMAIL (jchester@mcguirewoods.com)**</u>
Jonathan H. Chester
McGuireWoods LLP
77 West Wacker Drive
Suite 4100
Chicago, IL 60601-1818

       **Re:**    **Tampering, Interference and Conversion of Network Equipment by ContextMedia, Inc. d/b/a Rheumatoid Health Network/Diabetes Health Network ("ContextMedia")**

Dear Mr. Chester:

      We received your letter dated January 28, 2011. Your letter fails to address the central issues: ContextMedia unlawfully removed our client's property (the "Healthy Advice Property" defined in our letter dated January 20, 2011) from various physicians' offices, unlawfully retained the property, and has not returned all of the Healthy Advice Property to Healthy Advice.

      At this stage, our investigation has revealed: (1) ContextMedia uninstalled Healthy Advice Property from the subject physicians' offices without authorization from Healthy Advice; (2) certain Healthy Advice Property was returned to Healthy Advice in packaging bearing ContextMedia's labels (see Exhibit A attached to this letter). As shown on these labels, and confirmed by Federal Express, the packages including Healthy Advice Property were shipped out from ContextMedia's office at 205 North Michigan Avenue, Chicago, Illinois; (3) certain Healthy Advice Property removed from one or more of the physician offices is missing – in particular, a computer that is used to deliver Healthy Advice services containing Healthy Advice software, trade secrets and other intellectual property; and (4) a review of a computer returned to Healthy Advice indicates that the computer was turned on and accessed during the time the Healthy Advice Property was in ContextMedia's possession – in fact, apparently on the same day it was shipped from ContextMedia's office to Healthy Advice.

      In light of the above evidence and your admission that Healthy Advice Property "has come into ContextMedia's possession," our client demands that ContextMedia explain:

    1)      How, when, and under what circumstances ContextMedia came into possession of the Healthy Advice Property;

2)  The dates of ContextMedia's possession of the Healthy Advice Property and every location at which the Healthy Advice Property has been stored;

3)  Why the Healthy Advice Property was shipped from subject physicians' offices to ContextMedia's office; and

4)  When, why and who accessed the contents of the Healthy Advice computer returned to Healthy Advice on or about January 13, 2011.

Moreover, Healthy Advice reiterates its demand that ContextMedia return **all** of the Healthy Advice Property to Healthy Advice, **comply with Items 1 through 7 in our letter dated January 20, 2011, and immediately cease and desist** from removing Healthy Advice Property from physicians' offices and from engaging in any other unlawful activity with regard to Healthy Advice property and/or its contractual relationships.

**Furthermore, we remind you that, since at least as early as our letter dated January 20, 2011, ContextMedia is under a continuing legal duty to preserve all documents, no matter what form those documents are in, that are relevant or potentially relevant to this matter or risk court-imposed sanctions, fines, or other penalties for spoliation of evidence.** ContextMedia's duty to preserve all documents includes, but is not limited to: (1) all paper documents, all electronically stored information in its native format (including but not limited to emails, voice mails, text messages, etc.); (2) all copies of any information your client accessed from the Healthy Advice Property; (3) all communications in whatever form between ContextMedia's employees, independent contractors, agents, representatives or other individuals with Healthy Advice's clients; and (4) all documents including communications in whatever form regarding removal of the Healthy Advice Property from physician's offices, retention of the Healthy Advice Property, and accessing of information on the computers that were part of the Healthy Advice Property.  ContextMedia's duty to preserve evidence includes immediately turning off any auto-delete functions regarding its emails or other electronic documents.

ContextMedia must comply in full with the terms of this letter and our January 20, 2011 letter by no later than close of business **Friday, February 11, 2011**.  Indeed, a properly detailed and forthcoming response from your client is no doubt warranted under these facts.  Should our client receive anything less, it is prepared to prosecute ContextMedia's unlawful actions to the fullest extent of civil and criminal law.

The foregoing is not a complete recitation of our client's rights or remedies in this matter, and all such rights and remedies are specifically reserved.

Very truly yours,

FROST BROWN TODD LLC

/s/ Nilesh Patel

Nilesh S. Patel

**EXHIBIT A**







# EXHIBIT F

**McGuireWoods LLP**
77 West Wacker Drive
Suite 4100
Chicago, IL 60601-1818
Phone: 312.849.8100
Fax: 312.849.3690
www.mcguirewoods.com

Scott L. Glickson
Direct: 312.321.7652

# MCGUIREWOODS

sglickson@mcguirewoods.com
Direct Fax: 312.698.4585

February 11, 2011

**VIA E-MAIL and U.S. MAIL**
Nilesh (Neal) Patel, Esq.
Frost Brown Todd, LLC
2200 PNC Center, 201 East Fifth Street
Cincinnati, Ohio 45202-4182
npatel@fbtlaw.com

Re:   *Dispute Between Healthy Advice Networks LLC and ContextMedia, Inc.*

Dear Mr. Patel:

We are in receipt of your letter dated February 8, 2011 (the "February 8 Letter").

As an initial matter, ContextMedia denies any wrongdoing concerning Healthy Advice's property. ContextMedia has not taken, used, or retained any software, trade secrets, confidential or proprietary information, or any other intellectual property belonging to Healthy Advice. Only the Healthy Advice equipment from the practice of Dr. Kenneth Margules was shipped to ContextMedia's office before being shipped to Healthy Advice. ContextMedia has now put in place a procedure to assure that this will not be repeated. Any of Healthy Advice's equipment that is removed from a physician's office will be shipped directly from the physician's office to Healthy Advice. If, going forward, Healthy Advice would prefer that its equipment be left for pick-up at the physician's office or if it would like to otherwise coordinate the return of its equipment, ContextMedia will be happy to discuss a mutually agreeable method of pickup and/or return.

Regarding any purportedly "missing" equipment, to the best of ContextMedia's knowledge, all removed equipment, except for a single media player which has been lost during shipment by FedEx, has been returned to Healthy Advice, without damage. In fact, the photographs attached to the February 8 Letter confirm Healthy Advice's receipt of several pieces of equipment. ContextMedia is working with FedEx to locate the missing media player, but, to date, FedEx's efforts have been unsuccessful. In the spirit of cooperation, ContextMedia will file a claim with FedEx; however, in order to file the claim, Healthy Advice will need to provide ContextMedia with the media player's serial number. Alternatively, ContextMedia will provide Healthy Advice with the tracking information for the FedEx package, which will allow Healthy Advice to contact FedEx directly in an attempt to locate the media player. Let us know how you would like to proceed on this point.

Nilesh (Neal) Patel, Esq.
February 11, 2011
Page 2

As explained in more detail in our previous letter dated January 28, 2011, Healthy Advice is not justified in demanding that ContextMedia "cease and desist" contracting with various physicians to install media equipment. The companies are competitors in this market and ContextMedia has every right to, and intends to, continue soliciting contracts from physicians. In our estimation, our client has done nothing wrong and, other than the loss of agreements with physicians' offices that are terminable at will to a competitor with a superior service, your client has suffered no damage. Accordingly, except for the communications we have invited above concerning the return of equipment, we do not expect to receive any more baseless demands.

In light of your demands, this letter is for settlement purposes only and nothing herein is to be considered as an admission of any liability or facts. Neither is the foregoing intended to be an exhaustive recitation of the facts or law applicable to this situation; nor is this letter intended to waive any right, remedy or position ContextMedia may have, all of which are expressly reserved.

Please feel free to contact me with any questions.

Very truly yours,

Scott L. Glickson

cc:     Rishi Shah (via email)
        Jim Demas (via email)
        Jonathan H. Chester, Esq. (via email)

\29318209

# EXHIBIT G



**Nilesh (Neal) Patel**
Counsel
513.369.4805 (t)
513.651.6981 (f)
npatel@fbtlaw.com

March 1, 2011

**VIA EMAIL (sglickson@mcguirewoods.com)**
Scott L. Glickson
McGuireWoods LLP
77 West Wacker Drive
Suite 4100
Chicago, Illinois 60601-1818

Re: **Tampering, Interference and Conversion of Network Equipment by ContextMedia, Inc. d/b/a Rheumatoid Arthritis Network/Diabetes Health Network ("ContextMedia")**

Dear Mr. Glickson:

Following up on our phone conversation on February 25, 2011 and your letter dated February 11, 2011, be advised that Healthy Advice's position with regard to your client's unlawful acts is as follows:

During our phone conversation, you advised that ContextMedia had removed our client's property (the "Healthy Advice Property" defined in our letter dated January 20, 2011) because each of the subject physician offices wanted to switch from Healthy Advice's to ContextMedia's services. Whether or not that is true, as we discussed and as should be abundantly clear to your client by now, none of the physician offices had any authority whatsoever to authorize ContextMedia to remove Healthy Advice Property. Indeed, Healthy Advice's standard contract (and the specific contracts with each of the subject physician offices) expressly prohibits removal of or tampering with Healthy Advice Property without written permission from Healthy Advice. Healthy Advice granted no such permission to any of the subject physician offices or ContextMedia, nor could it have given that Healthy Advice did not discover the removal of the Healthy Advice Property until _after_ your client's unauthorized actions. As such, Healthy Advice rejects your client's concessions and offers regarding what to do with Healthy Advice Property once it has been removed. To be clear, the only acceptable solution on this point is that your client neither remove nor tamper with Healthy Advice Property in the first place.

In addition, separate and distinct from your client's unlawful handling of Healthy Advice Property, as we discussed and as should be abundantly clear to your client by now, the termination provisions in Healthy Advice's standard contract (including those with each of the subject physician offices), require a minimum service period _and_ a specified notice period _before_ the contract can be terminated. In other words, shipping the notice of termination along with

Mr. Scott L. Glickson
March 1, 2011
Page **2** of **4**

Healthy Advice equipment at the same time is a clear breach of contract.  So, your contention that Healthy Advice's contracts with the subject physician offices were terminable at will is simply incorrect.

In short, each of the subject physician offices breached their contract with Healthy Advice by: (1) permitting ContextMedia to remove Healthy Advice Property; (2) failing to provide the requisite notice for terminating their agreement with Healthy Advice; and, in at least one instance, (3) failing to meet the minimum service period for Health Advice services.  We have absolutely no doubt that your client has played a material role facilitating and inducing each such breach.  Your client's belief that such activity is just "fair completion" has no basis in law and is, quite frankly, absurd.

Finally, your most recent letter failed to address ContextMedia's unlawful access of one of the Healthy Advice computers (the "Computer").  You failed to offer any explanation during our discussion beyond reiterating that ContextMedia allegedly "has not taken, used, or retained any software, trade secrets, confidential or proprietary information, or any other intellectual property belonging to Healthy Advice."  Healthy Advice rejects ContextMedia's blanket denial.  The fact is that your client took possession of the Computer, the Computer includes Healthy Advice trade secrets and intellectual property, your client inserted a power cord from the Computer into a wall socket, your client turned the Computer on, and your client kept the Computer running for more than a trivial amount of time. These were intentional acts presumably undertaken for a purpose.  Your client's failure to provide any explanation of this activity is entirely unacceptable, especially given that another Healthy Advice computer your client took possession of remains missing. Unless Healthy Advice receives a proper explanation, it will have no choice but to initiate action to maintain protection of its trade secrets and other intellectual property rights.

Finally, your letter states that all missing Healthy Advice Property has been returned to Healthy Advice with the exception of a missing computer.  In fact, other equipment besides the computer remains missing after your client's unlawful removal of same.  Your client lost the computer and the other equipment and is, at a minimum, liable to Healthy Advice for reimbursement of same.

Our client demands the following:

1.      ContextMedia must *immediately cease and desist* from removing Healthy Advice Property from any location and *must immediately provide assurances* that it will not remove, tamper with or otherwise handle any Healthy Advice Property in the future.

2.      ContextMedia must *immediately provide a full and complete explanation* regarding the nature and circumstances surrounding its access of the Computer.

3.      ContextMedia *will immediately reimburse* Healthy Advice for the following missing equipment, costs and attorneys' fees:

Mr. Scott L. Glickson
March 1, 2011
Page **3** of **4**

a.    Dr. Kenneth Margules, Chicago, IL:

| | |
|---|---:|
| Monitor remote control | $ 35.00 |
| A-open power supply | $ 95.00 |
| Audio cable 1.5' | $ 3.00 |
| Stealth w/ power supply, bracket and DSL filter | $ 90.00 |
| USB modem | $ 3.00 |
| Easy Jack | $ 90.00 |
| Monitor mount arm, vertical bracket and 14"x14" wall plate | $ 72.00 |
| **Subtotal** | **$ 388.00** |

b.    Dr. Kenneth Margules, Libertyville, IL:

| | |
|---|---:|
| Monitor remote control | $ 35.00 |
| Aopen CPU w/ power supply | $ 765.00 |
| R2-232 cable 6' | $ 10.00 |
| Audio cable 1.5' | $ 3.00 |
| VGA cable 1' | $ 12.00 |
| Stealth w/ power supply, bracket and DSL filter | $ 90.00 |
| USB modem | $ 3.00 |
| Monitor mount arm, vertical bracket | $ 72.00 |
| **Subtotal** | **$ 990.00** |

c.    Dr. Carlos Martinez, Buffalo, NY

| | |
|---|---:|
| Monitor remote control | $ 35.00 |
| RS-232 cable 6' | $ 10.00 |
| Audio cable 1.5' | $ 2.00 |
| **Subtotal** | **$ 47.00** |

d.    Attorney fees' and costs    **$8,400.00**

e.    **Final Total**    **$9,825.00**

     If ContextMedia does not meet and satisfy each of Healthy Advice's demands set forth in paragraphs 1 through 3 above, by no later than end of business on March 4, 2011, Healthy Advice will pursue legal action against ContextMedia for injunctive relief, damages, and all other relief allowable under law or equity, including possible criminal charges.

Mr. Scott L. Glickson
March 1, 2011
Page **4** of **4**

The foregoing is not a complete recitation of our client's rights or remedies in this matter, and all such rights and remedies are specifically reserved.

Very truly yours,

FROST BROWN TODD LLC

Nilesh (Neal) Patel

# EXHIBIT H

**Scott L. Glickson**
Direct: 312.321.7652

sglickson@mcguirewoods.com
Direct Fax: 312.698.4585

March 4, 2011

**VIA E-MAIL and U.S. MAIL**
Nilesh (Neal) Patel, Esq.
Frost Brown Todd, LLC
2200 PNC Center, 201 East Fifth Street
Cincinnati, Ohio 45202-4182
npatel@fbtlaw.com

Re:    ***Dispute Between Healthy Advice Networks LLC and ContextMedia, Inc.***

Dear Mr. Patel:

We are in receipt of your letter dated March 1, 2011 (the "March 1 Letter").

In the course of its business, ContextMedia has always relied, and will continue to rely, on the physician's representations regarding the termination of the physician's contract with a third-party, such as Healthy Advice.  As such, when a physician represents to ContextMedia that the physician is authorized to terminate the contract with Healthy Advice, remove Healthy Advice's equipment, and install ContextMedia's equipment, ContextMedia will remove Healthy Advice's equipment for the office and install its own, just as it does whenever any competitor's equipment is present.  Perhaps Healthy Advice would like to provide ContextMedia with a copy of each contract it has with a physician so that ContextMedia may be certain of its terms.  As you stated during our phone conversation, the terms of Healthy Advice's contracts vary and, unless you can provide us with some authority to the contrary, we believe ContextMedia is entitled to rely on the physician's directions.

In a sincere effort to find a middle ground (which we have not yet seen from you, despite your statements about wanting to do so), ContextMedia proposes the following procedure in situations in which a physician provides notice of his or her decision to switch from Healthy Advice to ContextMedia:

- Once ContextMedia receives authorization from the physician to remove Healthy Advice's equipment and install its own, notice of termination will promptly be provided to Healthy Advice;

Nilesh (Neal) Patel, Esq.
March 2, 2011
Page 2

- After receiving the notice of termination, Healthy Advice will have five (5) days to remove its equipment from the physician's office; and

- If Healthy Advice has not removed its equipment within five (5) days of receiving the notice of termination, ContextMedia will arrange to have the Healthy Advice equipment removed and returned, on behalf of the physician, by a contract service provider approved by Healthy Advice.

- In addition, in any case where a physician has decided to replace ContextMedia's service with that of Healthy Advice, ContextMedia is willing to abide by the same arrangements.

If this proposal is acceptable, please let us know that and provide us with the name of your approved service provider. ContextMedia will then promptly revise its field procedures accordingly.

Regarding any purportedly "missing" equipment, ContextMedia reiterates that, to the best of its knowledge, all removed equipment, except for a single media player which has been lost during shipment by FedEx, has been returned to Healthy Advice, without damage. Except for that media player, the items listed in your letter are trivial and certainly were not appropriated by ContextMedia. It will attempt to learn if those items are still at the physician's office and, if they are, will have them shipped to Healthy Advice. Further, in the interest of resolving this dispute, ContextMedia is willing to reimburse Healthy Advice for the cost of the lost media player, provided that, as we requested previously, Healthy Advice provides us with the serial number for that device, which FedEx has said is required to further attempt to locate the lost media player. .

This letter is for settlement purposes only and nothing herein (or not addresses herein) is to be considered as an admission of any liability or facts. Neither is the foregoing intended to be an exhaustive recitation of the facts or law applicable to this situation; nor is this letter intended to waive any right, remedy or position ContextMedia may have, all of which are expressly reserved.

Nilesh (Neal) Patel, Esq.
March 2, 2011
Page 3


                              Very truly yours,


                              Scott L. Glickson


cc:    Rishi Shah (via email)
       Jim Demas (via email)
       Jonathan H. Chester, Esq. (via email)


\29751051