# **EXHIBIT 58**

## CONFIDENTIALITY AGREEMENT

This Confidentiality Agreement (the "Agreement") confirms the terms and conditions under which the parties, Healthy Advice Networks LLC, an Ohio limited liability company located at 8230 Montgomery Road, Suite 300, Cincinnati, Ohio 45236, and __SOGETI USA__, a __OHIO__ corporation located at __DAYTON, OH__, may exchange proprietary information and materials for the purpose of exploring potential business opportunities between the parties.

1) For purposes of this Agreement, "Confidential Information" is defined as all information, whether or not reduced to writing, including, but not limited to, a party's catalog of products and/or services and all content, data models, records, plans, drawings, documents, manuals, processes, formulae, statistics, correspondence, prices, price lists, practices, source code, financial information, business methods and techniques, know-how, trade secrets, individually identifiable patient information and all other data concerning a party and its parent company and affiliates or its clients, suppliers, employees and subcontractors, other than information contained in sales and marketing materials available to the general public without restriction.

2) Each party (the "Recipient") agrees that all Confidential Information received from the other party (the "Disclosing Party") under this Agreement will be held in confidence and not disclosed to others, except as may be required by law or governmental regulation. In the event that the Recipient is required by law or governmental regulation to disclose any of the Confidential Information, the Recipient shall provide the Disclosing Party with prompt notice of such requirement and cooperate with the Disclosing Party's efforts, if any, to seek a protective order or other remedy. Whether or not such protective order or other remedy is obtained, disclosure may only be made of that portion of the Confidential Information which is legally required to be disclosed. The Recipient also agrees not to use such Confidential Information for its own benefit or for any purpose other than that set forth above without the prior written consent of the other party. The Recipient shall use the same standard of care to protect the confidentiality of information received from the Disclosing Party as it uses to protect its own confidential information, and shall limit disclosure of such information to those of its personnel and consultants (the "Representatives") who have an actual need to know and have a legal obligation to protect the confidentiality of such information. Each party's obligations regarding the confidentiality and nonuse of such information shall continue for three (3) years from the effective date of this agreement.

3) The obligations regarding confidentiality and use of Confidential Information set forth above shall not apply to any:

   a) Information which, at the time of disclosure, was published, known publicly, or otherwise in the public domain;

   b) Information which, after disclosure, is published, becomes known publicly, or otherwise becomes part of the public domain through no fault of the Recipient;

   c) Information which, prior to the time of disclosure, is known to the Recipient, or, after disclosure, is independently developed by the Recipient as evidenced by its written records; and

    d)     Information which, after disclosure, is made available to the Recipient in good faith by a third party who is under no obligation of confidentiality or secrecy to the Disclosing Party.

4) The exceptions of the preceding paragraph shall not apply to any specific information merely because it is included in more general non-confidential information, nor to any specific combination of information merely because individual elements, but not the combination, are included in non-confidential information.

5) All written documents containing Confidential Information and other confidential material in tangible form received by the Recipient under this Agreement shall remain the property of the Disclosing Party, and all such documents together with any copies or excerpts thereof and any such other material shall be promptly returned to the Disclosing Party or destroyed upon request.

6) Each party hereto acknowledges that the other party may, now or in the future, be engaged in businesses similar to or competitive with those of such party. Nothing in this Agreement shall limit or restrict either party hereto from engaging in such businesses or competing with the other party, so long as it does so without using the Confidential Information of the other party.

7) This Agreement may not be modified or amended except in a writing signed by both parties. No failure or delay on the part of any party in exercising any power or right under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of such right or power preclude any other further exercise thereof or the exercise of any other right or power. No waiver of any provision of this Agreement or consent to any departure by either party therefrom shall in any event be effective unless the same shall be in writing, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

8) No information regarding this Agreement or the other party's interest in the subject matter hereto shall be disclosed by either party without the prior consent of the other party.

9) Each party acknowledges and agrees that any breach by the Recipient or its Representatives (collectively, the "Breaching Party") of the agreements contained herein shall cause the Disclosing Party (the "Non-Breaching Party") irreparable harm and that the Non-Breaching Party's remedy at law for such breach shall be wholly inadequate. In the event of the breach or threatened breach of this Agreement, the Non-Breaching Party shall be entitled to temporary restraining orders and temporary and permanent injunctive relief to prevent such breach or threatened breach without being required to post bond therefor. In addition, the Breaching Party shall pay or reimburse to the Non-Breaching Party any and all expenses, including reasonable legal fees and expenses, that the Non-Breaching Party may incur as a result of such actual or threatened breach. The foregoing remedies shall be in addition to, and not in substitution for, any other remedies to which the Non-Breaching Party is entitled at law or in equity.

10) This Agreement represents the entire agreement between the parties hereto regarding the subject matter hereof and supersedes any prior agreements or communications between the parties, written or oral, and is intended as a complete and exclusive statement of the terms of the agreement regarding the subject matter hereof between the parties hereto.

HAN 006740

11) The effective date of this Agreement shall be _____.

ACCEPTED AND AGREED TO:

|  | Healthy Advice Networks, LLC |
|---|---|
| By: *Brian Hamm* (signature) | By: _____ |
| Print Name: BRIAN HAMMOND | Print Name: Thomas E. Campbell |
| Title: VP | Title: Executive Vice President, General Manager |
| Date: 3/6/2009 | Date: _____ |

## CONFIDENTIALITY AGREEMENT

This Confidentiality Agreement (the "Agreement") confirms the terms and conditions under which the parties, Healthy Advice Networks LLC, an Ohio limited liability company located at 8230 Montgomery Road, Suite 300, Cincinnati, Ohio 45236, and Contingent Network Services, a Ohio corporation located at 10098 International Boulevard, Cincinnati, OH 45246, may exchange proprietary information and materials for the purpose of exploring potential business opportunities between the parties.

1) For purposes of this Agreement, "Confidential Information" is defined as all information, whether or not reduced to writing, including, but not limited to, a party's catalog of products and/or services and all content, data models, records, plans, drawings, documents, manuals, processes, formulae, statistics, correspondence, prices, price lists, practices, source code, financial information, business methods and techniques, know-how, trade secrets, individually identifiable patient information and all other data concerning a party and its parent company and affiliates or its clients, suppliers, employees and subcontractors, other than information contained in sales and marketing materials available to the general public without restriction.

2) Each party (the "Recipient") agrees that all Confidential Information received from the other party (the "Disclosing Party") under this Agreement will be held in confidence and not disclosed to others, except as may be required by law or governmental regulation. In the event that the Recipient is required by law or governmental regulation to disclose any of the Confidential Information, the Recipient shall provide the Disclosing Party with prompt notice of such requirement and cooperate with the Disclosing Party's efforts, if any, to seek a protective order or other remedy. Whether or not such protective order or other remedy is obtained, disclosure may only be made of that portion of the Confidential Information which is legally required to be disclosed. The Recipient also agrees not to use such Confidential Information for its own benefit or for any purpose other than that set forth above without the prior written consent of the other party. The Recipient shall use the same standard of care to protect the confidentiality of information received from the Disclosing Party as it uses to protect its own confidential information, and shall limit disclosure of such information to those of its personnel and consultants (the "Representatives") who have an actual need to know and have a legal obligation to protect the confidentiality of such information. Each party's obligations regarding the confidentiality and nonuse of such information shall continue for three (3) years from the effective date of this agreement.

3) The obligations regarding confidentiality and use of Confidential Information set forth above shall not apply to any:

   a) information which, at the time of disclosure, was published, known publicly, or otherwise in the public domain;

   b) information which, after disclosure, is published, becomes known publicly, or otherwise becomes part of the public domain through no fault of the Recipient;

   c) information which, prior to the time of disclosure, is known to the Recipient, or, after disclosure, is independently developed by the Recipient as evidenced by its written records; and

CONFIDENTIAL

HAN005870

d) Information which, after disclosure, is made available to the Recipient in good faith by a third party who is under no obligation of confidentiality or secrecy to the Disclosing Party.

4) The exceptions of the preceding paragraph shall not apply to any specific information merely because it is included in more general non-confidential information, nor to any specific combination of information merely because individual elements, but not the combination, are included in non-confidential information.

5) All written documents containing Confidential Information and other confidential material in tangible form received by the Recipient under this Agreement shall remain the property of the Disclosing Party, and all such documents together with any copies or excerpts thereof and any such other material shall be promptly returned to the Disclosing Party or destroyed upon request.

6) Each party hereto acknowledges that the other party may, now or in the future, be engaged in businesses similar to or competitive with those of such party. Nothing in this Agreement shall limit or restrict either party hereto from engaging in such businesses or competing with the other party, so long as it does so without using the Confidential Information of the other party.

7) This Agreement may not be modified or amended except in a writing signed by both parties. No failure or delay on the part of any party in exercising any power or right under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of such right or power preclude any other further exercise thereof or the exercise of any other right or power. No waiver of any provision of this Agreement or consent to any departure by either party therefrom shall in any event be effective unless the same shall be in writing, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

8) No information regarding this Agreement or the other party's interest in the subject matter hereto shall be disclosed by either party without the prior consent of the other party.

9) Each party acknowledges and agrees that any breach by the Recipient or its Representatives (collectively, the "Breaching Party") of the agreements contained herein shall cause the Disclosing Party (the "Non-Breaching Party") irreparable harm and that the Non-Breaching Party's remedy at law for such breach shall be wholly inadequate. In the event of the breach or threatened breach of this Agreement, the Non-Breaching Party shall be entitled to temporary restraining orders and temporary and permanent injunctive relief to prevent such breach or threatened breach without being required to post bond therefor. In addition, the Breaching Party shall pay or reimburse to the Non-Breaching Party any and all expenses, including reasonable legal fees and expenses, that the Non-Breaching Party may incur as a result of such actual or threatened breach. The foregoing remedies shall be in addition to, and not in substitution for, any other remedies to which the Non-Breaching Party is entitled at law or in equity.

10) This Agreement represents the entire agreement between the parties hereto regarding the subject matter hereof and supersedes any prior agreements or communications between the parties, written or oral, and is intended as a complete and exclusive statement of the terms of the agreement regarding the subject matter hereof between the parties hereto.

- 2 -

CONFIDENTIAL

HAN005871

11) The effective date of this Agreement shall be June 11, 2009.

ACCEPTED AND AGREED TO:

CONTINGENT

By: [signature]

Print Name: Chad Mattix

Title: VP Corp. Dev.

Date: June 11, 2009

Healthy Advice Networks, LLC

By: [signature]

Print Name: Kimberly Theiss

Title: Director, Field Services Digital

Date: June 11, 2009

CINLibrary 0065527.03 [987] 1881586v3

- 3 -

CONFIDENTIAL

HAN005872

## CONFIDENTIALITY AGREEMENT

This Confidentiality Agreement (the "Agreement") confirms the terms and conditions under which the parties, Healthy Advice Networks LLC, an Ohio limited liability company located at 8230 Montgomery Road, Suite 300, Cincinnati, Ohio 45236, and ARS Services, a New Mexico corporation located at 8301-B Jefferson St. NE, Albuquerque, NM 87113, may exchange proprietary information and materials for the purpose of exploring potential business opportunities between the parties.

[handwritten margin note: Limited Liability Company]

1) For purposes of this Agreement, "Confidential Information" is defined as all information, whether or not reduced to writing, including, but not limited to, a party's catalog of products and/or services and all content, data models, records, plans, drawings, documents, manuals, processes, formulae, statistics, correspondence, prices, price lists, practices, source code, financial information, business methods and techniques, know-how, trade secrets, individually identifiable patient information and all other data concerning a party and its parent company and affiliates or its clients, suppliers, employees and subcontractors, other than information contained in sales and marketing materials available to the general public without restriction.

2) Each party (the "Recipient") agrees that all Confidential Information received from the other party (the "Disclosing Party") under this Agreement will be held in confidence and not disclosed to others, except as may be required by law or governmental regulation. In the event that the Recipient is required by law or governmental regulation to disclose any of the Confidential Information, the Recipient shall provide the Disclosing Party with prompt notice of such requirement and cooperate with the Disclosing Party's efforts, if any, to seek a protective order or other remedy. Whether or not such protective order or other remedy is obtained, disclosure may only be made of that portion of the Confidential Information which is legally required to be disclosed. The Recipient also agrees not to use such Confidential Information for its own benefit or for any purpose other than that set forth above without the prior written consent of the other party. The Recipient shall use the same standard of care to protect the confidentiality of information received from the Disclosing Party as it uses to protect its own confidential information, and shall limit disclosure of such information to those of its personnel and consultants (the "Representatives") who have an actual need to know and have a legal obligation to protect the confidentiality of such information. Each party's obligations regarding the confidentiality and nonuse of such information shall continue for three (3) years from the effective date of this agreement.

3) The obligations regarding confidentiality and use of Confidential Information set forth above shall not apply to any:

   a) information which, at the time of disclosure, was published, known publicly, or otherwise in the public domain;

   b) information which, after disclosure, is published, becomes known publicly, or otherwise becomes part of the public domain through no fault of the Recipient;

   c) information which, prior to the time of disclosure, is known to the Recipient, or, after disclosure, is independently developed by the Recipient as evidenced by its written records; and

d) Information which, after disclosure, is made available to the Recipient in good faith by a third party who is under no obligation of confidentiality or secrecy to the Disclosing Party.

4) The exceptions of the preceding paragraph shall not apply to any specific information merely because it is included in more general non-confidential information, nor to any specific combination of information merely because individual elements, but not the combination, are included in non-confidential information.

5) All written documents containing Confidential Information and other confidential material in tangible form received by the Recipient under this Agreement shall remain the property of the Disclosing Party, and all such documents together with any copies or excerpts thereof and any such other material shall be promptly returned to the Disclosing Party or destroyed upon request.

6) This Agreement may not be modified or amended except in a writing signed by both parties. No failure or delay on the part of any party in exercising any power or right under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of such right or power preclude any other further exercise thereof or the exercise of any other right or power. No waiver of any provision of this Agreement or consent to any departure by either party therefrom shall in any event be effective unless the same shall be in writing, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

7) No information regarding this Agreement or the other party's interest in the subject matter hereto shall be disclosed by either party without the prior consent of the other party.

8) Each party acknowledges and agrees that any breach by the Recipient or its Representatives (collectively, the "Breaching Party") of the agreements contained herein shall cause the Disclosing Party (the "Non-Breaching Party") irreparable harm and that the Non-Breaching Party's remedy at law for such breach shall be wholly inadequate. In the event of the breach or threatened breach of this Agreement, the Non-Breaching Party shall be entitled to temporary restraining orders and temporary and permanent injunctive relief to prevent such breach or threatened breach without being required to post bond therefore. In addition, the Breaching Party shall pay or reimburse to the Non-Breaching Party any and all expenses, including reasonable legal fees and expenses, that the Non-Breaching Party may incur as a result of such actual or threatened breach. The foregoing remedies shall be in addition to, and not in substitution for, any other remedies to which the Non-Breaching Party is entitled at law or in equity.

9) This Agreement represents the entire agreement between the parties hereto regarding the subject matter hereof and supersedes any prior agreements or communications between the parties, written or oral, and is intended as a complete and exclusive statement of the terms of the agreement regarding the subject matter hereof between the parties hereto.

CONFIDENTIAL                                                                                             HAN005887

10) The effective date of this Agreement shall be July 14, 2011.

ACCEPTED AND AGREED TO:

| ARS Services, LLC | Healthy Advice Networks, LLC |
|---|---|
| By: *[signature]* | By: *[signature]* |
| Print Name: GARY L. SIMS | Print Name: Michael G. McAllister |
| Title: GENERAL MANAGER | Title: Chief Operating Officer |
| Date: 7-14-11 | Date: July 14, 2011 |